## DEASON v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 15, 1918.)

### No. 3246.

1. CRIMINAL LAW ⬅➡371(1)—OBSTRUCTING ENLISTMENT—EVIDENCE—OTHER OFFENSES.

On trial of a defendant, under Espionage Act June 15, 1917, for willfully obstructing the recruiting or enlistment service, statements made by him before the passage of the act may be admissible, as tending to show the intent and purpose of statements subsequently made, on which the charge is based.

2. ARMY AND NAVY ⬅➡40—ESPIONAGE ACT—CONSTRUCTION—"OBSTRUCT" ENLISTMENTS.

In Espionage Act June 15, 1917, § 3, making it an offense to "willfully obstruct the recruiting or enlistment service," the word "obstruct" is not used as the equivalent of "prevent," but rather of "to make difficult," and, to warrant conviction for its violation, it need not be shown that defendant's words or acts actually prevented recruiting or enlistment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Obstruct.]

In Error to the District Court of the United States for the Western District of Texas; Duval West, Judge.

Criminal prosecution by the United States against Troy Deason. Judgment of conviction, and defendant brings error. Affirmed.

Levi Herring, of Glen Rose, Tex., for plaintiff in error.

Hugh R. Robertson, U. S. Atty., of San Antonio, Tex.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The plaintiff in error was convicted of a violation of section 3, title 1, chapter 30, of the Act of June 15, 1917 (40 Stat. 219), commonly called the Espionage Act. The germane part of that section is as follows:

"Whoever, when the United States is at war, shall willfully * * * obstruct the recruiting or enlistment service of the United States to the injury of the service or of the United States, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both."

The evidence showed, sufficiently to justify the jury's verdict, that the defendant had made threats against, and in the presence of, a member or members of his local exemption board, because of his not receiving a different classification, and for the purpose of bringing about a change in his classification. Certain technical errors are relied upon for reversal, based upon the admission of alleged incompetent evi-

dence, and certain exceptions to the general charge of the court, involving, among other things, the proper construction of the part of the section of the Espionage Act under which the conviction was obtained.

. The first error assigned is based upon the action of the court below in permitting the government's witness, Hubert Thomas, to testify that he was warned by parties to keep a watch out for defendant. The only ground of objection interposed by the defendant was that—

"Said statements, if any, were made to said witness after the defendant was arrested upon the charges complained of in the bill of indictment against the defendant."

The bill of exceptions contains this statement of the evidence excepted to, viz.:

"Witness testified further that some parties, whom he could not now recall, came to me and told me that I had better watch the defendant. I do not recall that they detailed any statements that defendant had made, but warned me to be on my guard."

The record fails to show that the warning was given after the arrest of the defendant, and, as the objection is based solely on that ground, it is unnecessary for us to consider whether it was otherwise admissible.  ·

[1] The second error relied upon is based upon the action of the court below in permitting the government's witness, J. B. Fox, to testify that in April, 1917, before the Selective Service Act (Act May 18, 1917, c. 15, 40 Stat. 76) was approved, he heard the defendant say:

"If Congress passes the draft act, we will have no more liberties in this country, and I think I will go to Mexico. They have a better form of government over there, anyway, than we have here."

The objection was placed upon the sole ground that—

"It was a statement made by the defendant prior to the enactment of the law which he is charged with violating."

If the government had relied upon the statement as a ground of conviction, the objection might have been tenable. It constituted, however, no part of the charge upon which he was indicted and tried. It was offered only to illustrate the intent and purpose with which he made the threats charged in the indictment. The statute punishes only a willful obstruction of recruiting or enlistment. The intent or purpose with which the threats were made was therefore an issue in the case. Unless the purpose to obstruct was deduced from the evidence by the jury, the defendant could not have been convicted. Statements made by the defendant, indicating his hostility to the draft, whether made before or after they became punishable by the Espionage Act, or before or after the draft was made an accomplished fact by legislation, might serve to illustrate to the jury the purpose with which he made the threats alleged to have been made after the approval of the Espionage Act, and which were alone relied upon as a ground for conviction.

[2] The third assignment of error is based on the defendant's exception to the court's general charge. The exception is based on three

grounds: (a) That it was a charge upon the weight of the evidence, in that it charged the jury that the presumption was that the defendant intended to carry out the threats, if any, he made; (b) and (c) because it charged that if the defendant, by words spoken or acts done, reasonably calculated to do so, intended to hinder or to obstruct the recruiting or enlistment service of the United States, to the injury of the service or of the United States, he would be guilty of the offense charged; and (d) because the evidence affirmatively showed that the words spoken and acts done by the defendant did not obstruct said service, and did not prevent the officers of the local exemption board from doing their duty as such. The exception is too broad, in that it includes portions of the court's charge that are unobjectionable with those that are claimed to be objectionable. Pretermitting this infirmity, we will consider whether the charge misconstrued the act of Congress upon which the conviction is based.

The contention of defendant is that the act punishes alone an obstructing of the service to its injury, or that of the United States, that is successful, and that the court's instruction that "the government is not required to prove, nor is it necessary, that any member of the local exemption board of Somerville county was actually prevented from, or hindered in, the performance of his duty as a member of said board, nor is the government required to prove that any person or persons were actually prevented from enlisting in the military service of the United States, or were actually prevented or hindered from doing anything that they were required to do under the provisions of the Selective Service Act," was in conflict with this construction of the act. The exact contention of the defendant's counsel is that the statutory word "obstruct" is equivalent to the word "prevent," and that success in the sense of an actual prevention of the performance of duty is essential to be proven before a conviction can be had.

We do not agree with this contention. It is true that the statute does not punish an attempt to obstruct, and the indictment does not charge an attempt to obstruct. Yet there may be an unsuccessful obstruction that is more than an attempt. We construe "obstruct," not as the equivalent of "prevent," but rather as the equivalent of "to make difficult" or "to present obstacles to the accomplishment of a thing." The obstacles may have failed to prevent accomplishment, but if they served to make accomplishment more difficult, either in the instant case for the members of the local exemption board against whom the threats were made, or in the future performance of their duties as such members, then we think the service was obstructed, within the meaning of the statute, to the injury of the service or of the United States, though the local board in the case of defendant overcame the obstruction and performed their duty by refusing to reclass him on his demand. That a threat of the nature indicated by the record would make it more difficult for the members of the local board to do their duty, both in defendant's case and in classifying future drafted men, is obvious. Presenting such an obstacle to the performance of the duty of the board in classifying under the draft act, we do not think the government was required to go further, and prove that the obstruction prevailed to the

extent of causing a miscarriage in a particular case. It was enough that it proved that the natural and inevitable tendency of such threats was to make it more difficult for the members of the board who were threatened to do their duty impartially than it would otherwise have been.

This being our view of what the act requires to be charged and proven, we think the court below correctly charged the jury that the threats, of themselves, and without direct proof of their success in preventing the board from doing its duty, might show to a jury a sufficient obstruction of the recruiting or enlistment service, to its injury and to that of the United States. In this view of the matter, the denials of all the members of the board that they were dissuaded from doing their duty by the threats are not conclusive of that issue, but at most mere evidence for the jury to act upon in determining it. The difficulty of making proof that the threats operated on the minds of the members of the local board effectively is reason enough for the adoption of the construction of the statute we have arrived at, if the language were less clear than it is, that the opposing of obstacles and difficulties to, and not the success of such obstacles and difficulties, is what determines guilt under the statute.

Being of the opinion that the District Court committed no reversible error, the judgment is affirmed.